# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6063 | **DATE** | 9/30/2004 |
| **CASE TITLE** | Marian D. Lampkin vs. United States Postal Service, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant United States Postal Service's motion for summary judgment (40-1) is granted. Defendant The National Association of Letter Carriers' motion for summary judgment (35-1) is granted. Plaintiff has presented no genuine issues of material fact; therefore, defendants are entitled to judgment as a matter of law. Court enters judgment in favor of defendants United States Postal Service and The National Association of Letter Carriers and against plaintiff Marian D. Lampkin. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 0 1 2004 | |
| | Notified counsel by telephone. | | date docketed | 57 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| CW | courtroom deputy's initials | 2004 SEP 30 PM 5:20 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

MARIAN D. LAMPKIN )
)
Plaintiff, )
)
v. ) No. 01 C 6063
) Paul E. Plunkett, Senior Judge
UNITED STATES POSTAL SERVICE and )
THE NATIONAL ASSOCIATION OF )
LETTER CARRIERS )
)
Defendants. )

DOCKETED
OCT 0 1 2004

## MEMORANDUM OPINION AND ORDER

This case is brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Marian Lampkin has sued the United States Postal Service ("USPS") for breach of a collective bargaining agreement ("CBA") and the National Association of Letter Carriers ("NALC") for breach of their duty to represent her fairly in her grievance against the USPS. Defendants have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on plaintiff's claim. For the reasons set forth below, the motion is granted.

### Facts

Unless otherwise noted, the following facts are undisputed. In April 2000, Marian Lampkin took the 470 Battery Exam, part of the United States Postal Service's external hiring scheme. (Def. USPS L.R. 56.1 Stmt. Nos. 1–3.) Her score, 73.2, was just over the minimum required to entitle

1

her for consideration for career employment, yet well below the score at which the Postal Service was then hiring. (*Id.* No. 21; Def. NALC L.R. 56.1 Stmt. No. 8.) The USPS was bound by its procedures to hire career candidates in descending order by their score. (Def. USPS L.R. 56.1 Stmt. No. 12; Pl.'s Resp. L.R. 56.1 Stmt. Def. NALC No. 8.) Although the USPS was making offers only to those who had scored 82 or above, Lampkin received notification that she had been hired for a career position. (Def. NALC L.R. 56.1 Stmt. Nos. 8–9.) She was given a badge that reaffirmed this designation, as well as forms for employee benefits enjoyed only by career hires. (*Id.* Nos. 10–12.) On this basis, Lampkin left a full-time job that offered her benefits such as health insurance and a 401(k) plan in order to work for the Postal Service. (Pl. L.R. 56.1 Stmt. No. 16.) However, she was later informed by the Postal Service that she was the victim of an administrative error. (Pl.'s Resp. L.R. 56.1 Stmt. Def. NALC Nos. 13, 14.) Her score of 73.2 did not qualify her for a career position and thus she could only be hired as a transitional, or temporary, employee. (*Id.*) She was therefore not entitled to benefits and would not be eligible to work for the Postal Service for more than a predetermined period of time. (Def. USPS L.R. 56.1 Stmt. No. 19.) Despite an evaluation describing her as "an asset to the postal service," Lampkin was removed from her status as a career employee and reclassified as a temporary one. (*Id.*; Pl. L.R. 56.1 Stmt. No. 18.)

Lampkin met with a steward for NALC and filed a grievance. (Pl.'s Resp. L.R. 56.1 Stmt. Def. NALC No. 22.) The USPS grievance process involves three steps prior to arbitration which involve a series of discussions between the employee or union representatives and the Postal Service. (Def. NALC L.R. 56.1 Stmt. Nos. 15–21.) NALC felt Lampkin's case had merit and proceeded to Step 1 in the process, but the grievance was denied. (Pl. L.R. 56.1 Stmt. No. 19; Def. NALC L.R. 56.1 Stmt. No. 25.) In preparation for the Step 2 meeting, union official James McCoy researched

2

similar arbitration claims and discovered a 1988 case he felt was relevant and detrimental to Plaintiff's case. (Pl.'s Resp. L.R. 56.1 Stmt. Def. NALC No. 29.) McCoy chose not to mention the case at the meeting. (*Id.*) Lampkin's grievance was denied at both Steps 2 and 3. (*Id.* Nos. 30–34.) NALC appealed the decision to arbitration. (*Id.* No. 35.) However, after reevaluating the merits of the case, NALC withdrew its appeal. (*Id.* Nos. 38–39.) McCoy believed that the 1988 case was sufficient to prevent Lampkin from prevailing in the arbitration. (*Id.* No. 39.) McCoy also took into account the expense of proceeding to arbitration in reaching his decision. (Def. NALC Resp. Pl. L.R. 56.1 Stmt. No. 31.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

### NALC's Breach of Duty of Fair Representation

An employee bringing a § 301 claim against her employer must first establish that the union breached its duty of fair representation. *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 869 (7th Cir. 1997). A union breaches this duty when its actions are arbitrary, discriminatory, or in bad faith. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). Issues of arbitrariness, discrimination or bad faith are considered distinct and must be weighed separately to determine if a breach has occurred. *Id.* As Plaintiff has not proffered any allegations of discrimination on the part of the NALC, we will consider only whether NALC acted arbitrarily or in bad faith in declining to bring her cause to arbitration.

Because courts are highly deferential to a union's decision construing a collective bargaining agreement, the test to determine whether the decision is arbitrary strongly favors the union. *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 613 (7th Cir. 2001); *McKelvin*, 124 F.3d at 867. A union's decision is not considered arbitrary unless it is "so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'" *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45 (1998) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)); *see also Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)) ("[O]nly an egregious disregard for union members' rights constitutes a breach of the union's duty."). Thus, a union member's burden on summary judgment is not just to establish that his position is as plausible as the [u]nion's, but to show that the union's position could eventually be deemed not even colorable." *Konen v. Int'l Bhd. of Teamsters*, 255 F.3d 402, 407 (7th Cir. 2001) (internal quotations and citations omitted).

Plaintiff's claim falls far short of this very high burden. By her own admission, union representatives "believed themselves to have done their best to redress [the] wrong" caused by USPS's mistake. (Pl.'s Resp. L.R. 56.1 Stmt. Def. NALC No. 46.) She has provided no evidence that NALC mishandled the case before deciding to withdraw from arbitration. Rather, Plaintiff argues that because her grievance was treated as if it had merit through the first three stages of the process, the decision to withdraw could not have been based on a lack of merit. NALC was aware of the same set of facts, the same evidence, and the same arbitral decision at Step 2 as it was when it decided to withdraw the case. Logic holds, Plaintiff argues, that NALC would not have appealed the grievance through Steps 3 and 4 unless it felt the facts, evidence, and arbitral decision all pointed to a winnable case. Plaintiff thus concludes that a reasonable jury could find the decision to withdraw was arbitrary.

However, the test we must follow in this case is not whether a jury might find Plaintiff's version of events is true but whether the basis for NALC's decision was unreasonable to the point of being wholly irrational. NALC contends the case was not pursued to arbitration because it believed that USPS did not violate the CBA. Though NALC reached this conclusion by Step 2 of the process, they proceeded through two more steps in the process, in an effort to reach a beneficial solution on behalf of Plaintiff. Before arbitration, NALC reviewed Plaintiff's grievance and the arbitral case and determined that she would not prevail. These steps are not beyond the bounds of rationality, and thus we cannot question NALC's interpretation of the CBA and their decision not to go forward. Furthermore, Plaintiff has made no specific references to the CBA to support her claim that it was violated. This makes the task of challenging NALC's construction of it all the more futile.

The question of whether a union has acted in bad faith is a subjective one requiring proof of an improper motive. *Neal*, 349 F.3d at 369. Plaintiff points to greed as the improper motive for NALC's decision to "drop[] her case like a hot potato once it had to fork over even modest funds." (Pl.'s Resp. Opp'n Def.'s Mot. Dismiss at 16, 18.) The only proof offered up is that James McCoy stated in a deposition that the grievance process "don't cost the union any money up until Step 4." (*Id.* at 17.) Reading the statement in its proper context reveals that McCoy claimed NALC never believed USPS had violated the CBA yet pursued Plaintiff's grievance because it hoped it could help undo the harm done her by the Postal Service's mistake. (Def. NALC's Mem. Supp. Mot. Dismiss, Ex. 1, McCoy Dep. at 63-64.) According to his testimony, the NALC attempted to convince the USPS to bring Lampkin back to work and get her health benefits during the negotiations leading up to arbitration. (Id. at 63.) Those negotiations did not cost the union anything beyond the representatives' salaries. (Pl.'s Aff., Ex. 10, McCoy Dep. at 61-62.) Going to arbitration requires paying an arbitrator, and therefore NALC decided to reevaluate the grievance before it reached that point. (Id.) Thus, while NALC did what it could for Lampkin, it would not commit to the expense of taking a case without merit to arbitration. (Id.) While Plaintiff may reject this version of McCoy's motivations, she has offered no further evidence beyond McCoy's carefully edited words to bolster her contention of bad faith based on greed, so it is to his words we must look to see if her claim is supported. It is not. As NALC correctly argues, a union may consider costs in deciding whether or not to pursue a grievance on behalf of an individual, as those costs may detrimentally affect the union as a whole, and a union represents all of its members. *Neal*, 349 F.3d at 369. If costs were the only consideration, Plaintiff's case would be somewhat stronger, but that is not the case here. *See Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1303 (7th Cir. 1992).

6

Plaintiff further argues that the NALC breached its duty of fair representation by failing to promptly notify her of the outcome of each stage of the grievance process. NALC disputes this, claiming it attempted to notify her but was unable to reach her. Assuming for the purposes of summary judgment that the Plaintiff's allegations are true, her argument nonetheless does not provide her a platform on which to build a § 301 case. First, her contention does not point to an improper motive on the part of NALC. Thus, a claim of bad faith on this basis fails. Second, in order to show that a union's actions were arbitrary for the purposes of § 301, she must show the outcome of her case would have been different if NALC had reported to her more consistently. *See Garcia*, 58 F.3d at 1176–77. She has offered no evidence in this vein and thus a claim of arbitrariness likewise fails.

## USPS's Breach of Collective Bargaining Agreement

In a "hybrid 301" case such as this one, an employee must "have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails." *Neal*, 349 F.3d at 368. All parties agree that Plaintiff suffered because of USPS's unfortunate mistake. However, the forum for redressing that mistake was the grievance procedure outlined in the CBA. That procedure was followed, though without the outcome Plaintiff would have preferred. Because she could not show she was unfairly represented during the procedure, her claim against USPS for breach of the CBA fails. Moreover, Plaintiff has not specified which provisions in the CBA were violated and thus there would be no basis on which to evaluate a claim of breach.

## Conclusion

Plaintiff has presented no genuine issues of material fact and therefore Defendants are entitled to summary judgment as a matter of law. This is a final and appealable order.

**ENTER:**

PAUL E. PLUNKETT
**SENIOR UNITED STATES DISTRICT JUDGE**

DATED: SEP 3 0 2004